813 A.2d 231

Ellery WILLIAMS

v.

STATE of Maryland.

No. 4 Sept. Term, 2002.

Court of Appeals of Maryland.

Dec. 19, 2002.

388

Nancy S. Forster, Deputy Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner/cross-respondent.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

We granted certiorari to consider whether evidence seized from a motel room following an entry by police is admissible in evidence on the grounds that it was seized as a result of an independent source or that it inevitably would have been discovered. We shall hold that under the circumstances presented herein, the evidence was seized in violation of the Fourth Amendment and is inadmissible.

I.

Ellery Williams, petitioner, was indicted in the Circuit Court for Allegany County for conspiracy to distribute controlled dangerous substances, to wit, cocaine; distribution of controlled dangerous substances, to wit, cocaine; possession of controlled dangerous substances, to wit, cocaine and marijua-

na; and maintaining a common nuisance. The Circuit Court granted Williams' motion to suppress evidence, and the State appealed, pursuant to Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–302(c)(3) of the Courts and Judicial Proceedings Article.[1]

On March 21, 2001, Maryland State Police Trooper Jason Merritt, assigned to the Narcotics Unit, applied for a search and seizure warrant for rooms 106 and 107 at the Continental Motor Inn in Allegany County, Maryland. Tpr. Merritt had just arrested an individual, Clarence Berry, for distribution of controlled dangerous substances from a motor vehicle. Based on information from Berry that he was staying at the Continental Motor Inn, the trooper drafted the application for a search warrant. While he was doing so, and until he could secure the search warrant, other officers went to the motel.

At approximately 9:00 p.m. that night, while Tpr. Merritt was preparing the warrant application, police officers approached adjoining rooms 106 and 107 of the Continental Motor Inn and knocked on the doors. Williams asked who was at the door, and the police responded "maintenance." Williams opened a curtain but did not open the door. The officers heard Williams running away from the door; they kicked in the door of room 106 and entered, without a warrant. Williams ran into room 107, followed by the police. Upon entering the rooms, the officers smelled marijuana and observed a small amount of marijuana on the bed in room 107. They arrested Williams, and while searching him, they found cocaine in his pajamas. Using a cell phone, the officers called Tpr. Merritt and conveyed to him the information they had

---

1. Pursuant to Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–302(c)(3)(i) of the Courts and Judicial Proceedings Article, the State may appeal in the following circumstances:

"In a case involving a crime of violence as defined in § 643B of Article 27, and in cases under §§ 286 and 286A of Article 27, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights."

just learned; Merritt included the information in his statement of probable cause to support the application for the search and seizure warrant. The warrant was signed by a judge of the District Court of Maryland. The officers searched no further until Tpr. Merritt returned with the warrant.[2]

---

2. The application for the search and seizure warrant reads as follows:

"On March 21, 2001, Your Affiant was contacted by CI–0752–072. The CI indicated that he/she had previously purchased crack cocaine from a black male known to the CI as 'Romello.' The CI further indicated that he/she could contact 'Romello' by using a number for a cellular telephone. The CI further stated that 'Romello' drove an older black in color BMW and that 'Romello' was not from the area and would stay in area motels when in town. The CI indicated that Romello when in town would be accompanied by one or two other black males.

"On March 21, 2001, a controlled purchase was arranged and the informant was to meet 'Romello' at the All–Star Convenience Store in Bel Air, Allegany County, Maryland; Romello was contacted by use of the cellular telephone number (301) 992–2338. Before meeting with Romello the CI was searched and found to be free of any drugs or money and was provided with currency and outfitted with a consensual monitoring device permitting police to overhear and record the transaction with Romello. The CI drove to the convenience store, his/her vehicle having been searched and found to be free of drugs or money. The CI was then under surveillance awaiting Romello's arrival at the convenience store. At approximately 4:53 p.m. a black BMW bearing Maryland registration tags JBZ 763 was observed entering the parking lot. The CI went over to this vehicle and entered it and was inside the vehicle less than one minute before returning to his/her own vehicle. The BMW was followed back to the Continental Motor Inn on Route 40 in LaVale, Allegany County, Maryland. The driver of the vehicle was observed parking the BMW and entering the building through a common doorway away from where the vehicle was parked. A check of the vehicle registration shows the vehicle to be registered to Clarence Earl Berry, b/m, DOB 11/07/77, 274 South Potomac Street, Hagerstown, Maryland. The CI after the transaction was followed to a predetermined location and the informant and his/her vehicle were searched and found to be free of any drugs or money. Prior to the search the CI turned over to your Affiant a quantity of suspected crack cocaine which the CI indicated was purchased from Romello. The suspected crack cocaine was field tested and tested positive for cocaine. The informant further indicated that Romello stated that he had more cocaine for sale and that he would prefer to bring a larger amount (the CI purchased $150.00 worth) as he (Romello) did not want to make too many trips due to the weather. (The weather was raining.)

"At approximately 8:11 p.m. on March 21, 2001, the CI made a call to Romello and arranged a second purchase at the same location. Officers again followed the same procedure and on this occasion the CI purchased $300 worth of crack cocaine. The suspected crack cocaine was again field tested positive [sic] and tested positive for cocaine. The BMW was stopped on Winchester Road near the Motor Vehicle Administration and Clarence Earl Berry (see description above) was found to be the operator and sole occupant of the vehicle. Berry was arrested due to the above distributions and was found to be in possession of the currency provided to the informant for the second purchase as well as some of the currency from the first purchase earlier on March 21, 2001. On Berry's person were two room keys to the Continental Motor Inn in LaVale, Allegany County, Maryland; one for room 106 and one for room 107.

"Due to the prior information from the CI that Berry was always accompanied by others who were also involved in the sale of cocaine, officers were dispatched to secure the rooms while your Affiant prepared this Affidavit and Application for Search Warrant. This was done as Berry was only a fifteen minute drive from the motel and once in custody it was believed that others working with Berry in the sale of cocaine would destroy the evidence (cocaine) once Berry did not return and did not answer his cellular telephone. Officers arriving at the Continental Motor Inn knocked on the door to Room 106 and a male voice asked 'Who is it?' The occupant pulled back a curtain on a window next to the door and then could be heard to running [sic] away from the door. Officers yelled 'Police. Open the door.' The occupant could still be heard moving away from the door. Officers at that time forced the door to Room 106 while indicating that they were police officers. Upon entry the occupant was observed running through a doorway into the adjoining room (room 107). On entering the odor of burnt marihuana was detected by officers. The sole occupant of the rooms, later identified as Ellery Williams, was subdued in Room 107. Officers in the two rooms could observe suspected marihuana (approximately ½ ounce) on the bed in Room 106. No further search of the rooms has been conducted at this time. Williams was placed under arrest for the marihuana located in the room. A search of his person resulted in the recovery of two plastic bags containing suspected crack cocaine; these bags were inside the waistband of the pajama bottoms which Williams was wearing. Your Affiant obtained this information from Sgt. Vincent, Deputy Cutter, TFC Shrout and Officer Pfaff who were at the motel."

"A criminal history check for Clarence Earl Berry was [sic] convicted of Possession of CDA with Intent to Distribute Marihuana (2 counts) in Hagerstown, Maryland. (Clarence Earl Berry is shown on the FBI check as an alias for Clayborn Stevens; the conviction from Hagerstown is under the name Clayborn Stevens. There are several other aliases listed as well-Clarence Berry, Claybourne Earl Stevens, Clayton Earl Stevens, Clay Berry, Clayborn Stevens, Clarence E. Berry and Claymont Stevens.)

"Your Affiant avers based on information received from the aforementioned sources, including a reliable confidential informant through numerous unrelated controlled purchases, your Affiant's

Williams filed a motion to suppress evidence seized by the police from his person and from rooms 106 and 107 at the Continental Motor Inn on the grounds that the seizure was unlawful. At the hearing, the State argued that exigent circumstances justified their entry into the rooms before the issuance of the warrant and that they had a right to secure or impound the premises until the police arrived with the warrant. The State also argued that if the initial entry into the rooms was deemed to be unlawful, the court should excise the tainted information in the warrant application and determine whether the remaining information established probable cause.

The Circuit Court granted the motion to suppress, rejecting the State's argument on the grounds that "the State has failed

---

training, knowledge, and expertise as a members [sic] of the C3I Narcotics Unit, that there is probable cause to believe and does believe that the laws regulating possession/distribution of Controlled Dangerous Substances as hereinbefore cited, are being violated, and will continue to be violated in and upon the residences aforedescribed.

"Therefore, your Affiant prays that a Search and Seizure Warrant be issued for the aforesaid premise, more particularly described aforesaid and that said Search and Seizure Warrant permit entry without said officers knocking and announcing entry to said premises, with the necessary and proper assistance to:

(a) Enter and search the aforesaid motel rooms-room numbers 106 and 107 at the Continental Motor Inn, 15001 National Highway, Lavale, Allegany County, Maryland, more particularly described aforesaid; and

(b) Search the person and clothing of all individuals that are found in, upon and around said dwelling and vehicles who may be participating in violations of the Statutes hereinbefore cited; and

(c) Open and search any vehicles, safes, boxes, bags, compartments, or things in the nature thereof, found in, upon, or around said premises, vehicles, or persons; and

(d) Seize all evidence and paraphernalia, Controlled Dangerous Substances and money used in or incidental to the operating or conduct of Controlled Dangerous Substance violations, found in or upon or around said residence or persons; and

(e) Seize papers, documents, letters, bills, or other evidence indicating who the residents of said premises are, who may be participating in violations of the statutes hereinbefore cited; and

(f) Arrest all persons found in, upon or around said premises, who may be participating in violations of Statutes hereinbefore cited."

to demonstrate that there was sufficient information for probable cause and even if so found, no exigent circumstances existed that would justify an 'impoundment' of the hotel rooms and its occupants without a warrant." The State never argued independent source or inevitable discovery.

In an unreported opinion, the Court of Special Appeals reversed. Before that court, the State argued that exigent circumstances justified the warrantless entry of the motel rooms, and, in the alternative, that even if the entry were unlawful, the warrant provided an independent source for the evidence. The intermediate appellate court held that the Circuit Court was not clearly erroneous in finding that no exigent circumstances justified an "impoundment" of the motel rooms. The court noted that "an impoundment is unreasonable if the exigent circumstances are the result of actions undertaken by the investigating officers." The court then turned to the question of whether the warrant, absent the tainted information, was supported by probable cause. Disagreeing with the Circuit Court, the court held that after the tainted portion was excised, the affidavit supporting the search warrant contained probable cause to conclude that a search of the motel rooms would uncover evidence of crime. The court held that the inevitable discovery doctrine applied to the evidence that Williams sought to suppress and that the State was entitled to introduce that evidence at trial.

We granted Williams' petition for writ of certiorari and the State's cross-petition, presenting the following questions:

"Did the Court of Special Appeals err in holding that the independent source/inevitable discovery doctrine applies in a situation where the police illegally enter a residence, observe marijuana in plain view, seize cocaine from the occupant upon his arrest, and then obtain a search warrant relying, in part, on the information derived from the illegal entry?

"Was the entry and impoundment of the motel room pending receipt of the search warrant justified?"

*Williams v. State,* 368 Md. 526, 796 A.2d 695 (2002).

## II.

Petitioner challenges the Court of Special Appeals' holding that the evidence found in the search of the motel room and on his person pursuant to a search incident to his arrest was admissible. The State argues that the police properly went to the motel to secure the rooms during the time it took to secure a search warrant and that when they arrived at the motel, exigent circumstances justified their entry into the rooms. The State maintains that, based on the earlier drug transaction in the car between the confidential informant and Berry, a cohort of petitioner, the police had probable cause to believe that drugs would be found in the motel room. The State recounts that once the police arrived at the motel room door, they did not immediately enter but merely knocked on the door. After they knocked on the door, petitioner saw the police and ran away. It is the State's position that at this point, if not before, exigent circumstances existed, authorizing a warrantless entry into the rooms.

If this Court were to reject the exigent circumstances argument and find the initial entry into the room unlawful, the State argues that the evidence was admissible pursuant to the independent source doctrine. The State argues that even if there is illegal police conduct, evidence seized pursuant to a subsequently issued valid warrant may be admissible if the warrant serves as an independent source for obtaining evidence. As a fallback position, the State argues that the evidence is admissible based on the inevitable discovery doctrine.

Petitioner agrees with the Court of Special Appeals and the trial court that the warrantless, initial entry by the police into the motel rooms was illegal because there existed no exigent circumstances to justify the entry. Petitioner argues, however, that the Court of Special Appeals should be reversed for

three reasons: First, the doctrine of inevitable discovery should not apply to the illegal seizure of primary evidence, as opposed to derivative evidence; second, the State did not establish that the warrant was untainted by the illegal entry into the rooms; and third, assuming *arguendo* that the doctrine of inevitable discovery is applicable, and further assuming *arguendo* that redaction of the illegally obtained information is appropriate, after excising the tainted information from the warrant, the warrant lacked probable cause.

### III.

Our review of the trial court's grant of a motion to suppress evidence under the Fourth Amendment is based solely on the record of the suppression hearing. *Wilkes v. State*, 364 Md. 554, 569, 774 A.2d 420, 429 (2001). The facts found by the trial court must be considered in the light most favorable to the party who prevailed on the motion, namely, Williams. *Id.* at 569, 774 A.2d at 429; *Jones v. State*, 343 Md. 448, 458, 682 A.2d 248, 253 (1996). We defer to the fact finding of the suppression court and accept the facts as found by that court unless clearly erroneous. *Wilkes*, 364 Md. at 569, 774 A.2d at 429. In determining whether a constitutional right has been violated, we make an independent, de novo, constitutional appraisal by applying the law to the facts presented in a particular case. *Id.*, 774 A.2d at 429; *Cartnail v. State*, 359 Md. 272, 283–84, 753 A.2d 519, 525 (2000).

### IV.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.[3] *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151

---

3. The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

L.Ed.2d 740 (2002). Searches of the home conducted without a warrant are presumptively unreasonable for "the Fourth Amendment has drawn a firm line at the entrance to the house," *Payton v. New York,* 445 U.S. 573, 586, 590, 100 S.Ct. 1371, 1380, 1382, 63 L.Ed.2d 639 (1980), and are "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." *Welsh v. Wisconsin,* 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984). In particular, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972). A motel room can be protected by the Fourth Amendment as much as a home or an office. *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964); *United States v. Jeffers,* 342 U.S. 48, 51–52, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951); *United States v. Richard,* 994 F.2d 244, 247 (5th Cir.1993).

■ The presumptive unreasonableness of a warrantless search of a home is subject to limited and narrow exceptions. *Welsh,* 466 U.S. at 749–50, 104 S.Ct. at 2097–98, 80 L.Ed.2d 732 (noting that "the Court has recognized only a few such emergency conditions"). *Payton v. New York* held that absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment. 445 U.S. at 583–90, 100 S.Ct. at 1378–82, 63 L.Ed.2d 639. Exigent circumstances exist when a substantial risk of harm to the law enforcement officials involved, to the law enforcement process itself, or to others would arise if the police were to delay until a warrant could be issued. *See Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978); *Dunnuck v. State,* 367 Md. 198, 205, 786 A.2d 695, 699 (2001); *Wengert v. State,* 364 Md. 76, 85, 771 A.2d 389, 394 (2001).

■ The exception for exigent circumstances is a narrow one. *Tyler,* 436 U.S. at 509, 98 S.Ct. at 1950, 56 L.Ed.2d 486 (ongoing fire); *United States v. Santana,* 427 U.S. 38, 42–43,

96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976)(hot pursuit of a fleeing felon); *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966)(imminent destruction of evidence); *Dunnuck,* 367 Md. at 206, 786 A.2d at 699 (destruction of evidence); *Carroll v. State,* 335 Md. 723, 734, 646 A.2d 376, 382 (1994)(suspected burglary). The Supreme Court has recognized that the potential destruction of evidence may constitute exigent circumstances. *Illinois v. McArthur,* 531 U.S. 326, 331–32, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001); *Santana,* 427 U.S. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d 300; *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1835–36, 16 L.Ed.2d 908; *see also United States v. Socey,* 846 F.2d 1439, 1444 (D.C.Cir.1988), *cert. denied,* 488 U.S. 858, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988); *Stackhouse v. State,* 298 Md. 203, 213–14, 468 A.2d 333, 338–39 (1983). "[A]n entry in the absence of exigent circumstances is illegal." *Segura v. United States,* 468 U.S. 796, 812, 104 S.Ct. 3380, 3389, 82 L.Ed.2d 599 (1984). A heavy burden falls on the government to demonstrate exigent circumstances that overcome the presumptive unreasonableness of warrantless home entries. *Welsh,* 466 U.S. at 750, 104 S.Ct. at 2098, 80 L.Ed.2d 732; *Stackhouse,* 298 Md. at 217, 468 A.2d at 341.

 To determine the reasonableness of a warrantless search or seizure based on exigent circumstances, we consider the facts as they appeared to the officers at the time of the entry. *Wengert,* 364 Md. at 86, 771 A.2d at 395; *Socey,* 846 F.2d at 1445. Factors to be considered include the gravity of the underlying offense, the risk of danger to police and the community, the ready destructibility of the evidence, and the reasonable belief that contraband is about to be removed. *Minnesota v. Olson,* 495 U.S. 91, 100–01, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990); *United States v. Riley,* 968 F.2d 422, 425 (5th Cir.1992). We determine exigency on a case by case basis. *Carroll,* 335 Md. at 737, 646 A.2d at 383.

 When the threatened emergency is the destruction of evidence, the government must show that the police, at the time of the entry, had a reasonable basis for concluding the

destruction of evidence was imminent. *See Stackhouse,* 298 Md. at 214, 468 A.2d at 339; *Socey,* 846 F.2d at 1445. The circumstances "must present a specific threat to known evidence." *Stackhouse,* 298 Md. at 213, 468 A.2d at 339. The police must reasonably believe that there was an immediate, urgent and compelling need for police action. *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1835–36, 16 L.Ed.2d 908; *McMillian v. State,* 325 Md. 272, 282–83, 600 A.2d 430, 435 (1992). The need must be "immediate and compelling" and not justified by "an inference about a future possibility." *Stackhouse,* 298 Md. at 217, 468 A.2d at 341. Moreover, the scope of the search must be limited to the exigencies that justified it. *Wengert,* 364 Md. at 86, 771 A.2d at 395.

This Court recently held that police officers may not justify a warrantless search based on exigent circumstances of their own making. *Dunnuck,* 367 Md. at 217–18, 786 A.2d at 705–06. We emphasized that circumstances that will justify a warrantless entry "cannot be created or precipitated by police actions or conduct." *Id.* at 206, 786 A.2d at 699–700.

In *Dunnuck,* the police received an anonymous tip that marijuana plants could be seen through a window of a home. *Id.* at 209, 786 A.2d at 701. They went to the home, saw marijuana plants through the window and then knocked on the front door of the house. No one answered the door. Instead of leaving and getting a search warrant, the officers waited near the house for someone to return. *Id.* at 209–10, 786 A.2d at 701. An hour later, Dunnuck returned home, and the officers knocked on the door, announcing themselves as the Drug Task Force. *Id.* at 210, 786 A.2d at 702. When they asked to be admitted, Dunnuck told them to "hold on a minute," and shortly thereafter an officer called out that the marijuana plants were moving. *Id.* at 211, 786 A.2d at 702. Fearing that the woman was destroying evidence, the officers began kicking on the door. The officers gained entry into the house.

We held that, despite having probable cause to search the house, exigent circumstances did not exist to justify a warrant-

less entry. *Id.* at 213, 786 A.2d at 703–04. We concluded that the police had no reasonable basis to believe that the marijuana plants were in danger of being destroyed. *Id.*, 786 A.2d at 704. Dunnuck had no knowledge of the investigation, and "[i]t was only when the police knocked on the door, announcing their presence and affiliation with the Drug Task Force and indicating that they 'needed to come in,' that the petitioner was placed on notice." *Id.* at 214, 786 A.2d at 704. We noted:

> "[T]he precipitating cause for [the officers' fear that the evidence would be destroyed] was the actions of the police themselves. By knocking on the petitioner's door and announcing that they were with the Drug Task force and 'needed' to come in, the police alerted the petitioner to their investigation.... [T]he police created the exigency that they rely upon to justify the warrantless entry into the ... house and to excuse their failure to obtain a search warrant."

*Id.* at 215, 786 A.2d at 705.

■■■■ Many courts have expressed similar concerns about police-created exigencies and have held that a warrantless entry may not be justified based on exigent circumstances that are the result of police actions.[4] *Dunnuck,* 367 Md. at 206–07, 786 A.2d at 699–700; *see also United States v. Aquino,* 836 F.2d 1268, 1272 (10th Cir.1988); *United States v. Webster,* 750 F.2d 307, 327 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985); *United States v. Rosselli,* 506 F.2d 627, 629–31 (7th Cir.1974); *United States v. Curran,*

---

4. Some courts have attempted to distinguish between circumstances designed to subvert the warrant requirement and those circumstances that *naturally arise* in the course of an appropriate police investigation. *See, e.g., United States v. Richard,* 994 F.2d 244, 248 (5th Cir.1993); *United States v. Socey,* 846 F.2d 1439, 1448 (D.C.Cir.1988), *cert. denied,* 488 U.S. 858, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988); *United States v. Webster,* 750 F.2d 307, 327–28 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). In *Socey,* the United States Court of Appeals for the District of Columbia Circuit noted that "there is a key distinction between cases where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances." 846 F.2d at 1448.

498 F.2d 30, 34 (9th Cir.1974); *People v. Foskey,* 175 Ill. App.3d 638, 125 Ill.Dec. 82, 529 N.E.2d 1158, 1161 (1988), *aff'd,* 136 Ill.2d 66, 143 Ill.Dec. 257, 554 N.E.2d 192 (1990); *State v. Hutchins,* 116 N.J. 457, 561 A.2d 1142, 1148–49 (1989). "Whereas exigent circumstances are the exception to the warrant requirement, a manufactured exigency is the exception to the exception." *United States v. Howard,* 106 F.3d 70, 78 (5th Cir.1997).

With the above principles in mind, we turn to the State's argument that exigent circumstances justified the warrantless entry into rooms 106 and 107. The police officers needed a reasonable basis for concluding that the destruction of evidence was imminent. The test is what a reasonable police officer would have believed at the time of the warrantless entry. *McMillian,* 325 Md. at 282, 600 A.2d at 435.

The State argues that the threat of destruction of evidence was real and imminent because Williams' cohort, Berry, had been arrested and Berry's failure to return to the motel in a timely fashion would have alerted Williams to destroy the evidence. The State concludes that the officers had a reasonable belief that the contraband would have been removed or destroyed prior to the time that it would have taken to secure a warrant.

The State relies on the following facts to support its argument. After the first distribution of controlled dangerous substances, Berry returned to the motel within fifteen minutes. The police testified that they were aware that drug dealers sometimes made arrangements that if contact is not made with the accomplice within a designated period of time, evidence will be removed or destroyed. In addition, the police suspected that Berry worked with another person when he came to town and knew that there were cellular phones in Berry's car.

Petitioner and the State's reading of the law is not that different and the dispute between them, for the most part, is factual, not legal. Petitioner argues that the police had no reasonable basis to believe that anyone other than Berry

occupied the motel rooms, but even giving credence to the statement given by the informant regarding Berry's customary practice of being accompanied by another person when he came to town, there was no reasonable basis for the police to believe that a companion would have removed or destroyed evidence.[5]

In considering whether the State has established exigent circumstances, we keep in mind the Supreme Court's explanation in *Welsh v. Wisconsin:*

"[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions and has actually applied only the 'hot pursuit' doctrine to arrests in the home."
466 U.S. at 749–50, 104 S.Ct. at 2097–98, 80 L.Ed.2d 732 (citations omitted). In order to satisfy its heavy burden, the State must demonstrate "specific and articulable facts to justify the finding of exigent circumstances." *United States v. Shephard,* 21 F.3d 933, 938 (9th Cir.1994). Moreover, this burden may not be satisfied "by leading a court to speculate about what may or might have been the circumstances." *United States v. Driver,* 776 F.2d 807, 810 (9th Cir.1985).

Courts have recognized that the arrest of a drug courier can itself create exigent circumstances if the supplier is likely to become suspicious when the courier does not return and the courier was expected to return with the proceeds of the drug transaction. *See, e.g., Riley,* 968 F.2d at 425–26; *United States v. Lai,* 944 F.2d 1434, 1443 (9th Cir.1991)(citing *United States v. Lindsey,* 877 F.2d 777, 781 (9th Cir.1989)). In *Lai,* a case relied upon by the State, the United States Court of Appeals for the Ninth Circuit found exigent circumstances sufficient to justify a warrantless entry primarily because the

---

**5.** After Berry was arrested, he was interrogated by Sgt. Vincent. At the suppression hearing, Vincent testified that Berry refused to answer any questions as to whether there were any other persons at the motel or whether there was any pre-arranged signal to destroy drugs if he failed to return in a timely manner.

evidence established that the person arrested was a drug courier for Lai who would have been expected to return with the money and that Lai might have had a police scanner to monitor arrests. 944 F.2d at 1443. In addition, there was evidence in the record that Lai's cohort was arrested in public a few blocks from Lai's house, creating the possibility that an onlooker would inform Lai of the arrest. *Id.*

■ We agree that upon consideration of all the facts in a given case, there may be sufficient exigency to justify a warrantless entry by police officers into a home. In establishing exigency, however, it is not enough to show that probable cause exists to believe that contraband is contained within. In addition, as we have explained, the State must demonstrate that the destruction or removal of that evidence was imminent.

■ The trial court rejected the State's exigency argument. The Court of Special Appeals affirmed, holding that the trial court was not clearly erroneous. We agree. On the basis of the evidence presented in the instant case, this Court is not convinced that the warrantless entry into the motel rooms was justified by exigent circumstances. The mere possibility or suspicion that a person might destroy evidence does not create an exigency. Nor is the generalized fear that some drug dealers may have pre-arranged agreements based on estimated return times sufficient to find exigent circumstances. While reasonable fear of discovery of an investigation or of the presence of police officers may be sufficient, that fear may not be self-created. No evidence was presented to show that Williams was aware of Berry's arrest or that he was aware that the police were planning to enter and search the motel room (at least not until the police-created circumstance). *See Curran,* 498 F.2d at 34 (stating that "[k]nowing that marijuana was present and knowing that [by approaching the front door] they would make their presence known to the occupants, the officers consciously established the condition which the government now points to as an exigent circumstance").

The instant case is similar to *United States v. Richard*, 994 F.2d 244 (5th Cir.1993). In that case, federal customs agents investigating drug smuggling arrested one suspect who told police that another suspect could be found at a motel. Agents proceeded to the motel and spoke with the motel clerks, confirming that two men were registered to the room and had made and received numerous telephone calls from the room. The agents knocked on the door and announced their presence. When they heard whispers, slamming drawers, and moving about from within, the agents kicked in the door. The United States Court of Appeals for the Fifth Circuit held that the district court did not clearly err in finding the agents deliberately created the exigency. *Id.* at 248. The court found that the exigent circumstances did not arise until the agents knocked on the door and announced themselves. *Id.* at 249. The court dismissed as pure speculation the government's argument that the occupants of the rooms would have suspected problems when their arrested cohort did not return, stating: "No evidence was offered at the suppression hearing to suggest that the room's occupants knew about [the] arrest, that they were aware they were being watched, or that they were destroying evidence." *Id.*

We agree with the Court of Special Appeals that the Circuit Court did not err in finding that exigent circumstances did not justify the warrantless entry into the motel rooms; therefore, that entry was unlawful.

## V.

Our conclusion that the police entered unlawfully into the motel rooms does not end the inquiry. The State argues that the evidence is admissible based on the independent source doctrine or the inevitable discovery exception to the exclusionary rule.

The Supreme Court has articulated three exceptions to the exclusionary rule: attenuation, independent source, and inevitable discovery. *See Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984)(finding that evi-

dence the police inevitably would have discovered through legal means may be admitted regardless of the illegality involved); *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)(finding that attenuation can purge evidence of the taint of government illegality); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920)(finding that illegally obtained evidence can be admitted if an independent source also led police to its discovery); *Miles v. State,* 365 Md. 488, 520–21, 781 A.2d 787, 806 (2001), *cert denied,* 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002) (discussing attenuation, independent source and inevitable discovery). These exceptions aim to balance the interests of society in deterring unlawful police conduct with the interest of ensuring juries receive all probative evidence of a crime. *Nix,* 467 U.S. at 442–44, 104 S.Ct. at 2508–09, 81 L.Ed.2d 377.

 There is a close kinship between inevitable discovery and independent source but although they are closely related, they are analytically distinct. The distinction has been described in *State v. Winkler,* 552 N.W.2d 347, 354 n. 4 (N.D. 1996) (quoting *United States v. Markling,* 7 F.3d 1309, 1318 n. 1 (7th Cir.1993)) as follows:

> " 'The inevitable discovery doctrine applies where evidence is not actually discovered by lawful means, but inevitably would have been. Its focus is on what would have happened if the illegal search had not aborted the lawful method of discovery. The independent source doctrine, however, applies when the evidence actually has been discovered by lawful means. Its focus is on what actually happened—was the discovery tainted by the illegal search?' "

The two doctrines differ in that "under the independent source doctrine, evidence that was *in fact* discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible." *United States v. Herrold,* 962 F.2d 1131, 1140 (3d Cir.1992). Under the inevitable discovery doctrine, evidence is admissible that *inevitably would have been* discovered through lawful

means even though the means that led to its discovery were unlawful. *Id.*

The independent source doctrine had it genesis in *Silverthorne Lumber Co.*, where the Supreme Court held that the exclusionary rule applies not only to illegally seized evidence but also to other incriminating evidence derived from that primary evidence. 251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed. 319. The *Silverthorne* Court noted, in dicta, that even if the government obtains knowledge of certain facts in an unlawful manner, as long as knowledge of those facts was derived from a lawful, independent source untainted by the initial illegality, they may be admissible. *Id.*, 40 S.Ct. at 183, 64 L.Ed. 319. The exclusionary rule does not apply when the State learns of the challenged evidence from an independent source. *See Segura*, 468 U.S. at 805, 104 S.Ct. at 3385, 82 L.Ed.2d 599. The Court explained the underlying policy of the doctrine in *Murray v. United States:*

> "[W]hile the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply."

487 U.S. 533, 542, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988); *see also Nix*, 467 U.S. at 443–44, 104 S.Ct. at 2508–09, 81 L.Ed.2d 377. Under the independent source doctrine, the question is a concrete one of whether the government actually acquired evidence by reliance on an untainted, legal source. *See Murray*, 487 U.S. at 538–39, 541, 108 S.Ct. at 2534, 2535, 101 L.Ed.2d 472; *see also* 5 Wayne R. LaFave, *Search and Seizure* § 11.4(a), at 241 (3d ed.1996).

The State argues that the search warrant the officers obtained provided an independent legal source for the evidence seized. The State suggests that the trial court's finding that "a second search and seizure occurred" after police obtained the warrant demonstrates that the evidence found in the initial illegal entry was "reseized" during a lawful search

when the warrant was executed. Petitioner argues that the independent source doctrine is unavailable to the State because the State never offered any evidence to establish that any evidence was seized pursuant to the search warrant, or as to what, if anything, was seized during any alleged second search. Neither the trial court nor the Court of Special Appeals considered whether the evidence was admissible under the independent source doctrine.

The State relies upon *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), and *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In *Segura*, the Supreme Court held that although the police had unlawfully searched Segura's apartment when they entered without a warrant, the drugs they seized in the subsequent search of the apartment pursuant to a search warrant need not be suppressed because "there was an independent source for the warrant under which that evidence was seized." [6] 468 U.S. at 813–14, 104 S.Ct. at 3390, 82 L.Ed.2d 599. The police arrested Segura and remained within his apartment for nineteen hours. The police searched the apartment and seized the drugs only after officers returned and searched the next day with a valid search warrant. Because "[n]one of the information on which the warrant was secured was derived from or related in any way to the initial entry," the Court said, the search warrant was "a 'means sufficiently distinguishable' to purge the evidence of any 'taint' arising from the entry." *Id.* at 814, 104 S.Ct. at 3390, 82 L.Ed.2d 599 (citing *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)).

In *Murray*, the Supreme Court held that the independent source doctrine applies to evidence initially discovered unlawfully but subsequently lawfully obtained as a result of an independent source untainted by the initial illegality. 487 U.S.

---

6. The evidence seized by the police during the initial, illegal entry of Segura's home was suppressed. The only issue before the Supreme Court was whether the drugs and other items not observed during the initial entry and later discovered under a valid search warrant were admissible.

at 542, 108 S.Ct. at 2535, 101 L.Ed.2d 472. Federal law enforcement agents entered an unoccupied warehouse, without a search warrant, where they "observed in plain view numerous burlap-wrapped bales that were later found to contain marijuana." *Id.* at 535, 108 S.Ct. at 2532, 101 L.Ed.2d 472. They left without disturbing the bales, kept the warehouse under surveillance and applied for a warrant. The warrant application did not contain any information the officers learned during that entry. When the warrant was issued eight hours later, the agents immediately reentered the warehouse and seized 270 bales of marijuana.

The Supreme Court was faced with a factual situation that the knowledge that the marijuana was in the warehouse was acquired at the time of the initial, illegal entry. The Court rejected the notion that "objects 'once seized cannot be cleanly reseized without returning the objects to private control.'" *Id.* at 541–42, 108 S.Ct. at 2535, 101 L.Ed.2d 472. The Court noted that it is possible to reseize evidence already seized illegally. The Court reasoned that if the evidence also was acquired at the time of entry pursuant to a warrant, and if the later acquisition was not the result of the earlier entry, there was no reason that the independent source doctrine should not apply. *Id.* at 541, 108 S.Ct. at 2535, 101 L.Ed.2d 472. The Court emphasized that the "ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue." *Id.* at 542, 108 S.Ct. at 2536, 101 L.Ed.2d 472. The Court observed, however, that it "may well be difficult to establish [that a later, lawful seizure is genuinely independent of an earlier, tainted one] where the seized goods are kept in the police's possession." *Id.*, 108 S.Ct. at 2535, 101 L.Ed.2d 472.

A threshold question, apart from deciding whether the warrant was valid and provided a genuinely independent source for the evidence, is whether the State seized or "reseized" any evidence pursuant to an independent source, i.e., the warrant. The analysis of whether the independent source

doctrine applies begins by assessing what evidence actually was seized under a warrant and then whether that warrant was genuinely independent of the initial illegality.

In the instant case, the independent source doctrine is inapplicable because the State has failed to identify any evidence that was seized pursuant to the search warrant. The State introduced the warrant application and the warrant itself but not the return.[7] The record is devoid of any evidence, testimonial or documentary, indicating that *anything* was seized pursuant to the search warrant.[8] In fact, the record indicates that the cocaine found in petitioner's pajamas was seized during the initial, illegal entry and that the police

---

7. Maryland Rule 4–601(c) requires that an officer executing a search warrant shall make and sign a written inventory of all property seized under the search warrant. Maryland Rule 4–601(d) requires that an executed warrant shall be returned to the issuing judge, accompanied by the verified inventory. One purpose behind Rule 4–601 is to identify the property admitted as the same property as that which was seized. *See Fitez v. State*, 9 Md.App. 137, 141–42, 262 A.2d 765, 767–68 (1970). Although the failure to comply with the return requirement does not render the search invalid, under the circumstances of the instant case, the absence of the inventory and the return and any testimony as to what may have been seized pursuant to the warrant limits our review.

8. The State argues that "the parties and the court were proceeding on the basis that a search warrant ultimately was issued and drugs were seized, or reseized, during the execution of this warrant." We cannot consider the drugs to have been "reseized" because on this sparse record, we cannot determine when the marijuana was seized. At the suppression hearing, the State maintained that the marijuana was seized when it was observed in plain view.

· The State's reliance upon *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), is of no assistance. In *Murray*, the Supreme Court explained:

"So long as a later, lawful seizure is genuinely independent of an earlier, tainted one ... there is no reason why the independent source doctrine should not apply."

*Id.* at 542, 108 S.Ct. at 2535, 101 L.Ed.2d 472. The requirement that the source be "genuinely independent" and the product of a "later, lawful seizure" weighs against the State's independent source argument. In this case, there is no "later" as in *Murray* and *Segura*.

The trial court, in a written memorandum and order, noted that "a warrant was obtained and a second search and seizure occurred." There is no evidence in the record to support the conclusion that a second seizure took place.

saw the marijuana when they first entered room 107 but is silent as to when the marijuana on the bed was seized.

With no information identifying evidence obtained through lawful means, the independent source doctrine is inapplicable. There cannot be a genuinely independent source for the evidence found on Williams and on the bed during the initial illegal entry if there was no subsequent legal seizure. The facts before us reveal only evidence seized as a result of the initial unlawful entry. The State has not shown, by a preponderance of the evidence, that there was an independent source for the evidence entered against Williams.

## VI.

With the independent source doctrine inapplicable, we next consider whether the evidence is admissible under the inevitable discovery doctrine. Evidence obtained as a result of an illegal search is admissible where, absent the illegal conduct, the evidence inevitably would have been discovered through legal means. *See Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984).

In *Nix v. Williams,* the United States Supreme Court first recognized the inevitable discovery doctrine. The police in that case learned of the location of a young girl's body in violation of a defendant's Sixth Amendment right to counsel. *Nix,* 467 U.S. at 435–37, 104 S.Ct. at 2505–06, 81 L.Ed.2d 377. At the same time, a search team was looking for the body, but they stopped searching when told of the location of the body. *Id.* at 448–50, 104 S.Ct. at 2511–12, 81 L.Ed.2d 377. The government presented detailed testimony regarding the team's search methods and what would have happened had searchers not been told the location of the body. *Id.,* 104 S.Ct. at 2511–12, 81 L.Ed.2d 377. The Court held that the State had shown, by a preponderance of the evidence, that the body inevitably would have been discovered through lawful means and was therefore admissible. *Id.* at 449–50, 104 S.Ct. at 2512, 81 L.Ed.2d 377.

 In *Stokes v. State*, 289 Md. 155, 162–63, 423 A.2d 552, 556–58 (1980), we discussed the inevitable discovery doctrine. In that case, armed with a search warrant, the police searched Stokes' residence for controlled dangerous substances. Based on a statement made by Stokes, which was later determined to be involuntary, they discovered hidden narcotics. On appeal, the State argued that the drugs inevitably would have been discovered. We noted:

> "[W]e are not required here to definitively decide whether the [inevitable discovery] doctrine should be embraced and applied in this State. Even though, generally speaking, the constitutional legitimacy of the doctrine of inevitable discovery as well as the basic requisites of this tenet are established, courts do not always agree on the manner of its application. In the matter before us, however, we need not venture beyond recognition of the existence of the inevitable discovery doctrine and its basic requirements ... for, in this case, the State has failed to meet even the most minimal requirements of that doctrine."

*Id.* at 164–65, 423 A.2d at 557 (footnote omitted).[9] Emphasizing that speculation will not satisfy the demands of the inevitable discovery doctrine, we rejected the State's unsupported assertion that a subsequent search would have uncovered the narcotics. An "unsupported assertion ... is no substitute for evidentiary proof." *Id.* at 165, 423 A.2d at 557–58. The "government must establish that it *has not* benefitted

---

9. Our observation over twenty years ago in *Stokes* that courts do not agree on the application and contours of the inevitable discovery doctrine is still true today. *Compare United States v. Kennedy*, 61 F.3d 494, 498–99 (6th Cir.1995)(discussing the split in federal circuits as to whether inevitable discovery requires an independent line of investigation and holding that "an alternate, independent line of investigation is not required"), *with United States v. Cherry*, 759 F.2d 1196, 1205–06 (5th Cir.1985) (holding that the prosecution must demonstrate that the government was actively pursuing an alternate line of investigation at the time of the misconduct). *Compare United States v. Zapata*, 18 F.3d 971, 979 n. 7 (1st Cir.1994) (applying inevitable discovery to primary evidence), *with United States v. $639,558 in United States Currency*, 955 F.2d 712, 718–21 (D.C.Cir.1992)(refusing to apply inevitable discovery to primary evidence).

by the illegal acts of its agents; a showing that it *might not* have so benefitted is insufficient." *Id.* at 164, 423 A.2d at 557.

In *Oken v. State*, 327 Md. 628, 654–56, 612 A.2d 258, 270–71 (1992), this Court applied the inevitable discovery doctrine. Oken appealed a denial of a motion to suppress the tennis shoes he was wearing when he was arrested, arguing the shoes were the fruit of an illegal arrest because the probable cause for the arrest was derived from an illegal search at a Maine motel. The trial court denied his motion to suppress because the evidence that led to his arrest inevitably would have been discovered when chambermaids cleaned his room. On appeal to this Court, Oken argued that the State had not met its burden of proving that the evidence seized from the motel room inevitably would have been discovered. The State had offered testimony detailing the motel's cleaning procedures that would have led to the discovery of evidence in Oken's room and would have prompted the staff to contact police. We affirmed, holding that "the State presented ample evidence demonstrating that the items in Room 48 would have been inevitably discovered through lawful means." *Id.* at 655, 612 A.2d at 271.

▰▰▰ In sum, the State has the burden of proving, by a preponderance of the evidence, that the evidence in question inevitably would have been found through lawful means. *See, e.g., Nix,* 467 U.S. at 444, 104 S.Ct. at 2509, 81 L.Ed.2d 377; *Oken,* 327 Md. at 654, 612 A.2d at 270–71. This standard embodies two ideas—that there was a lawful method for acquiring the evidence and that the evidence inevitability *would* have been discovered. When challenged evidence inevitably would have been discovered lawfully regardless of police misconduct, the deterrence effect of exclusion is minimal, and exclusion of the evidence would put police in a worse position than they would have been without any illegal conduct. *Nix,* 467 U.S. at 444, 104 S.Ct. at 2509, 81 L.Ed.2d 377. The inevitable discovery doctrine necessarily involves an analysis of *what would have happened* if a lawful investigation had proceeded, not what actually happened. The analysis of what would have happened had a lawful search proceeded should

focus on historical facts capable of easy verification, not on speculation. *Id.* at 444 n. 5, 104 S.Ct. at 2509 n. 5, 81 L.Ed.2d 377; *United States v. Vasquez De Reyes,* 149 F.3d 192, 195 (3d Cir.1998); *United States v. Kennedy,* 61 F.3d 494, 497–98 (6th Cir.1995).

The State argues that because the police were actively pursuing a search warrant, they inevitably would have discovered the evidence seized in the motel rooms. The record contains uncontradicted evidence that police were seeking a search warrant at the time of the illegal entry.[10] Williams argues that the evidence nonetheless should be suppressed because the warrant included information derived from the initial unlawful entry and therefore could not provide an independent legal means for seizing the evidence. He argues that the affidavit contained information the police learned only as a result of the illegal entry, thereby tainting the warrant and that, under *Murray v. United States,* 487 U.S. 533, 542, 108 S.Ct. 2529, 2536, 101 L.Ed.2d 472 (1988), redacting the warrant is inappropriate. Moreover, Williams argues, even if excising the tainted information was appropriate, the warrant lacked probable cause. The Court of Special Appeals held that excising the tainted information was appropriate and that,

---

**10.** Courts disagree whether active pursuit of an independent line of investigation is necessary for the inevitable discovery exception to apply. *United States v. Kennedy,* 61 F.3d 494, 498 (6th Cir.1995)(noting that "[w]hether an independent line of investigation is required for the inevitable discovery exception of to apply is a question that has divided the circuits"). In *Kennedy,* the court held:

"[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered. Therefore, we hold that an alternate, independent line of investigation is not required for the inevitable discovery exception to apply."

*Id.* at 499–500; *see also United States v. Ford,* 22 F.3d 374, 377 (1st Cir.1994); *United States v. Boatwright,* 822 F.2d 862, 864 (9th Cir. 1987). *Contra United States v. Owens,* 782 F.2d 146, 152 (10th Cir. 1986); *United States v. Cherry,* 759 F.2d 1196, 1205–06 (5th Cir.1985); *United States v. Satterfield,* 743 F.2d 827, 846 (11th Cir.1984); *People v. Diaz,* 53 P.3d 1171, 1176 (Colo.2002) (en banc).

after redaction, there existed sufficient probable cause for the warrant to issue. We agree.

Tainted information in a warrant affidavit does not vitiate an otherwise valid warrant issued upon probable cause set out in an affidavit. *Holmes v. State*, 368 Md. 506, 514, 796 A.2d 90, 95 (2002); *Klingenstein v. State*, 330 Md. 402, 414, 624 A.2d 532, 538 (1993); *United States v. Gillenwaters*, 890 F.2d 679, 681–82 (4th Cir.1989); *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987); *United States v. Mankani*, 738 F.2d 538, 545 (2d Cir.1984); *cf. Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). Petitioner argues that excising the tainted information is improper in light of *Murray*. In *Murray*, the Supreme Court noted:

> "The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case ... if information obtained during that entry was presented to the Magistrate *and affected his decision to issue the warrant.*"

487 U.S. at 542, 108 S.Ct. at 2536, 101 L.Ed.2d 472 (emphasis added). Courts around the country, however, have interpreted *Murray* to endorse an objective test along the lines employed in *Franks v. Delaware* rather than a subjective test of whether tainted information actually affected the decision of the issuing magistrate. *See, e.g., United States v. Ford*, 22 F.3d 374, 378–80 (1st Cir.1994); *Herrold*, 962 F.2d at 1140–44; *People v. Weiss*, 20 Cal.4th 1073, 86 Cal.Rptr.2d 337, 978 P.2d 1257, 1259–63 (1999).

We agree with the approach of the majority of courts that the following objective test is appropriate in light of *Murray:* whether, after constitutionally tainted information is excised from the warrant, the remaining information is sufficient to support a finding of probable cause. *See, e.g., United States v. Shamaeizadeh*, 80 F.3d 1131, 1135–36 (6th Cir.1996); *Ford*, 22 F.3d at 378–80; *United States v. Reed*, 15 F.3d 928, 933–34 (9th Cir.1994); *Markling*, 7 F.3d at 1315–17; *United*

States v. Restrepo, 966 F.2d 964, 968–71 (5th Cir.1992); Herrold, 962 F.2d at 1141–43; Gillenwaters, 890 F.2d at 681–82; State v. Gulbrandson, 184 Ariz. 46, 906 P.2d 579, 590–92 (1995) (en banc); Williams v. State, 327 Ark. 213, 939 S.W.2d 264, 268 (1997); Weiss, 86 Cal.Rptr.2d 337, 978 P.2d at 1259–63; People v. Sprowl, 790 P.2d 848, 850–51 (Colo.Ct.App.1989); State v. Joyce, 243 Conn. 282, 705 A.2d 181, 185–87 (1997); State v. Revenaugh, 133 Idaho 774, 992 P.2d 769, 774–75 (1999); People v. Bielawski, 255 Ill.App.3d 635, 194 Ill.Dec. 373, 627 N.E.2d 710, 713–15 (1994); State v. Seager, 571 N.W.2d 204, 212 n. 5 (Iowa 1997); State v. Hills, 626 So.2d 452, 454–55 (La.Ct.App.1993); People v. Melotik, 221 Mich. App. 190, 561 N.W.2d 453, 458–59 (1997); State v. Lieberg, 553 N.W.2d 51, 55 (Minn.Ct.App.1996); State v. Beeken, 7 Neb. App. 438, 585 N.W.2d 865, 873–74 (1998); People v. Cassadei, 165 A.D.2d 6, 565 N.Y.S.2d 286, 289–90 (N.Y.App.Div.1991); State v. McLean, 120 N.C.App. 838, 463 S.E.2d 826, 828–29 (N.C.Ct.App.1995); State v. Boll, 651 N.W.2d 710, 716, 719–20 (S.D.2002); State v. Lange, 158 Wis.2d 609, 463 N.W.2d 390, 397 n. 3 (Ct.App.1990).

When a warrant contains constitutionally tainted information, as in this case, excising that information is the appropriate course of action. After excising the tainted information, the warrant will be upheld if the remaining information establishes probable cause. Holmes, 368 Md. at 517, 796 A.2d at 97. The Circuit Court proceeded properly in excising the tainted information from the warrant.

▬▬▬ Probable cause for a search warrant exists when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); Holmes, 368 Md. at 519, 796 A.2d at 98. A reviewing court must decide whether the issuing judge had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d 527; McDonald v. State, 347 Md. 452, 467, 701 A.2d 675, 682 (1997). Moreover, "[d]irect

evidence that contraband exists in the home is not required for a search warrant; rather, probable cause may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items." *Holmes,* 368 Md. at 522, 796 A.2d at 100.

The Circuit Court held that, after excising the information gleaned from the initial illegal entry, the warrant was not supported by probable cause. The Court of Special Appeals found otherwise. We agree with Chief Judge Murphy, writing for the Court of Special Appeals, and hold that probable cause existed to support the warrant.

The tainted information describing the warrantless entry and arrest of Williams is identifiable, and we can readily determine whether, absent that tainted paragraph, the application contained sufficient information to support a finding of probable cause. The affidavit for the warrant contains a sufficient factual basis to constitute probable cause apart from the information the officers learned during their initial entry. An informant approached police with information about Clarence Berry, indicating that he was not from the area, and that he would stay in local motels while in the area. The police then arranged for the informant to make two controlled purchases of cocaine from Berry. In between the two purchases, police followed Berry's car to the motel, where Berry entered the building through a common doorway. After the first purchase, the informant reported that Berry stated he had more cocaine for sale and that he would prefer to bring a larger amount. Following a second controlled purchase, police stopped Berry's car and arrested him for controlled dangerous substances violations. A search of Berry's person yielded keys to rooms 106 and 107. These factors, taken together, provide a substantial basis for a finding of probable cause.

Williams argues that, assuming *arguendo* that a valid warrant exists, the inevitable discovery doctrine should not apply

to primary, as opposed to derivative, evidence.[11] In this case we need not resolve whether the doctrine applies to primary evidence because even if the doctrine applies to primary evidence, the facts in this case would not support the application of the exception.[12]

---

11. The distinction between primary evidence and derivative evidence has been explained by Professor LaFave as follows:

"In the simplest of Fourth Amendment exclusionary rule cases, the challenged evidence is quite clearly 'direct' or 'primary' in its relationship to the prior arrest or search, so that if it is determined that a Fourth Amendment violation has occurred it is apparent that the consequence must be suppression in the trial of a defendant who has standing to object to the violation.... Not infrequently, however, challenged evidence is 'secondary' or 'derivative' in character.... In these situations, it is necessary to determine whether the derivative evidence is 'tainted' by the prior Fourth Amendment violation. To use the phrase coined by Justice Frankfurter, it must be decided whether that evidence is the 'fruit of the poisonous tree.' "
See 4 Wayne R. LaFave, *Search and Seizure* § 11.4, at 369–70 (2d ed.1987) (footnotes omitted).

12. We point out, however, that the overwhelming majority of courts that have considered the scope of the inevitable discovery doctrine have applied the doctrine to primary evidence. *See, e.g., United States v. Souza,* 223 F.3d 1197, 1202–06 (10th Cir.2000); *United States v. Kennedy,* 61 F.3d 494, 496, 501 (6th Cir.1995); *United States v. Woody,* 55 F.3d 1257, 1270 (7th Cir.1995); *United States v. Ford,* 22 F.3d 374, 376–81 (1st Cir.1994); *United States v. Zapata,* 18 F.3d 971, 979 n. 7 (1st Cir.1994); *United States v. Martin,* 982 F.2d 1236, 1240 (8th Cir.1993); *United States v. Lamas,* 930 F.2d 1099, 1100–04 (5th Cir. 1991); *United States v. Whitehorn,* 813 F.2d 646, 649–50 (4th Cir.1987); *United States v. Pimentel,* 810 F.2d 366, 368 (2d Cir.1987); *People v. Burola,* 848 P.2d 958, 960 (Colo.1993)(en banc); *Commonwealth v. O'Connor,* 406 Mass. 112, 546 N.E.2d 336, 339 (1989); *State v. Poit,* 216 Neb. 635, 344 N.W.2d 914, 917 (1984); *Clough v. State,* 92 Nev. 603, 555 P.2d 840, 840–41 (1976); *State v. Sugar,* 108 N.J. 151, 527 A.2d 1377, 1380 (1987); *cf. Murray v. United States,* 487 U.S. 533, 540– 41, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988). *But see, e.g., United States v. $639,558 in United States Currency,* 955 F.2d 712, 718–21 (D.C.Cir.1992); *LaMunion v. State,* 740 N.E.2d 576, 581–82 (Ind.Ct. App.2000); *People v. Turriago,* 90 N.Y.2d 77, 659 N.Y.S.2d 183, 681 N.E.2d 350, 354–56 (1997).

 In addition, while not stating explicitly that the inevitable discovery doctrine also applies to primary evidence, several Maryland cases appear to have applied the doctrine to primary evidence, concluding that evidence was admissible under the exception that otherwise would have been excluded. *See, e.g., Wilson v. State,* 132 Md.App. 510, 542– 43, 752 A.2d 1250, 1268 (2000); *Guy v. State,* 91 Md.App. 600, 612–14,

That the police actually secured a search warrant addresses only one part of the inevitable discovery equation. The State must also demonstrate that the evidence *inevitably would have been* found. *Stokes,* 289 Md. at 163, 423 A.2d at 556; *Ford,* 22 F.3d at 377–78. This Court emphasized the significance of "would" in *Stokes,* noting:

> "Jurisdictions which recognize the doctrine caution that courts may not, under the guise of inevitable discovery, admit tainted evidence after launching a speculative inquiry into what might or could have occurred. . . . *The significance of the word 'would' cannot be overemphasized.* It is not enough to show that evidence 'might' or 'could' have been otherwise obtained. Once the illegal act is shown to have been in fact the sole effective cause of the discovery of certain evidence, such evidence is inadmissible unless the prosecution severs the causal connection by an affirmative showing that it *would* have acquired the evidence in any event."

289 Md. at 164, 423 A.2d at 556–57 (emphasis added) (citations omitted). In his discussion of the inevitable discovery exception, Professor LaFave cautioned against reliance upon speculation and conjecture. He stated:

> "[C]ourts must be extremely careful not to apply the 'inevitable discovery' rule upon the basis of nothing more than a hunch or speculation as to what otherwise might have occurred. A 'majority of the courts that have utilized the exception have tended to define the necessary probability in terms of would,' which is the constitutional standard."

5 LaFave, *supra,* § 11.4(a), at 247 (footnotes omitted); *see also United States v. Owens,* 782 F.2d 146, 153 (10th Cir.1986)(concluding "that the inevitable discovery exception to the exclusionary rule cannot be invoked because of the highly speculative assumption of 'inevitability' that would be required to apply it here").

---

605 A.2d 642, 648–49 (1992); *Whitmire v. State,* 61 Md.App. 548, 553–54, 487 A.2d 686, 689 (1985). *But see Smith v. State,* 72 Md.App. 450, 468–69, 531 A.2d 302, 311–12 (1987).

■ Inevitable discovery, in the instant case, is based solely upon the search warrant. Inevitable discovery of the cocaine in petitioner's pajamas or the marijuana on the bed was never raised or argued at the suppression hearing.[13] Applicability of the inevitable discovery doctrine is a highly fact-based determination and involves review by a trial court whether the evidence in question inevitably would have been found. See United States v. Lang, 149 F.3d 1044, 1047 (9th Cir.1998)(noting that "the inevitable discovery doctrine is an essentially factual inquiry"). The Supreme Court noted that inevitable discovery cannot rest upon speculation but must be supported by historical facts that can be verified or impeached. See Nix, 467 U.S. at 444 n. 5, 104 S.Ct. at 2509 n. 5, 81 L.Ed.2d 377; Lang, 149 F.3d at 1047; Oken, 327 Md. at 654–55, 612 A.2d at 270–71; see also United States v. Allen, 159 F.3d 832, 838–40 (4th Cir.1998); Vasquez De Reyes, 149 F.3d at 195–96; United States v. Conner, 127 F.3d 663, 665, 667 (8th Cir.1997); Kennedy, 61 F.3d at 497 98, 500; People v. Burola, 848 P.2d 958, 963 n. 5 (Colo.1993) (en banc).

Although we have found no court opinion limiting the application of the inevitable discovery doctrine to inanimate ob-

---

13. The contradiction between an exigent circumstances argument and an inevitable discovery argument perhaps explains why the State did not argue inevitable discovery at the suppression hearing. An argument that the evidence inevitably would have been found in the motel rooms during a search pursuant to a warrant undermines the exigency argument and the reasonableness of the initial warrantless entry. The two arguments of reasonableness and inevitability are seemingly contradictory. See United States v. Husband, 226 F.3d 626, 635 n. 5 (7th Cir.2000). The court in Husband noted:

"[T]he parties' arguments as to reasonableness and as to inevitable discovery are seemingly contradictory.... In the reasonableness context the government thus has the incentive to argue that the drugs were likely to be lost if swallowed, while in the inevitable discovery context the government has the incentive to argue that the drugs would have been recovered regardless of whether the defendant swallowed the packets."

Id.; see also United States v. Cabassa, 62 F.3d 470, 474 (2d Cir.1995)(noting that DEA agent's assertion of exigent circumstances justifying warrantless entry undercuts the argument that the same evidence inevitably would have been found by a later search pursuant to a search warrant).

jects, the doctrine has been applied most often to tangible evidence of an inanimate nature such as a dead body. *See, e.g., Nix,* 467 U.S. at 448–49, 104 S.Ct. at 2512, 81 L.Ed.2d 377 (body of missing girl); *United States v. Zapata,* 18 F.3d 971, 978–79 (1st Cir.1994) (cocaine); *United States v. Pimentel,* 810 F.2d 366, 368 (2d Cir.1987) (letters); *Oken,* 327 Md. at 653–55, 612 A.2d at 270–71 (shirt, socks, vodka, and orange juice). Some courts have been reluctant to apply the doctrine to evidence which is by its nature ephemeral or to evidence somehow dependent upon a person "wait[ing] patiently beside his [contraband] for an agent to arrive with a warrant." *United States v. Boatwright,* 822 F.2d 862, 865 (9th Cir.1987); *see also, e.g., Vasquez De Reyes,* 149 F.3d at 195–96; *United States v. Walker,* 43 F.Supp.2d 828, 836–37 (N.D.Ohio 1998).

In *Boatwright,* the police set out to conduct a legal probationary search of one home but first illegally entered a nearby converted garage because of the smell emanating from it. During that illegal entry and search, police discovered Boatwright in possession of two guns; they arrested him and seized the guns. The government argued that it would have applied for a search warrant for the garage and inevitably would have found the guns. The United States Court of Appeals for the Ninth Circuit rejected the argument, noting:

"There is nothing outside the unlawful search itself that points to the inevitable discovery of weapons in control of this defendant. Applying the inevitable discovery doctrine here would, therefore, permit the government to ignore search requirements at any convenient point in the investigation, and would go well beyond the present scope of the doctrine. This we decline to do.

We note also that, as a factual matter, the assumption that the officers would have found Rickie with the shotguns ... is most unrealistic. Rickie would not have waited patiently beside his weapons for an agent to arrive with a warrant. As a factual matter ... the evidence cannot be admitted under the doctrine of inevitable discovery."

*Id.* at 865. The appellate court held the inevitable discovery doctrine inapplicable and the evidence inadmissible. *Id.*

In *United States v. Vasquez De Reyes,* the court refused to apply the inevitable discovery doctrine to an oral statement following an illegal stop, noting:

"While we know of no articulation of the inevitable discovery doctrine that restricts its application to physical evidence, and we are not prepared in this case to enunciate such a condition, it is patent why cases have generally, if not always, been so limited. A tangible object is hard evidence, and absent its removal will remain where left until discovered. In contrast, a statement not yet made is, by its very nature, evanescent and ephemeral. Should the conditions under which it was made change, even but a little, there could be no assurance the statement would be the same."

149 F.3d at 195–96.

To apply the inevitable discovery exception to the cocaine found in petitioner's pajamas during the search incident to his arrest, we would have to find that he inevitably would have been in the motel rooms when the police executed the search warrant. On this sparse record, we cannot conclude that Williams inevitably would have been in the room, dressed in his pajamas, with the cocaine concealed therein. *See Stokes,* 289 Md. at 164–66, 423 A.2d at 557–58; *United States v. Reilly,* 224 F.3d 986, 994–95 (9th Cir.2000)(refusing to apply inevitable discovery because the government failed to meet its burden of proof); *Vasquez De Reyes,* 149 F.3d at 196 (declining to apply inevitable discovery doctrine where application "requires an unacceptable degree of assumption and speculation"); *United States v. Cabassa,* 62 F.3d 470, 474 (2d Cir.1995)(noting that the government showing "that more probably than not the evidence would have been in the [apartment] when a lawful search occurred" was alone too susceptible to factual error to meet the government's burden); *Boatwright,* 822 F.2d at 865 (holding inevitable discovery doctrine inapplicable because there was no evidence "that point[ed] to the inevitable discovery of weapons in control of" the defen-

dant); *Walker*, 43 F.Supp.2d at 836–37 (refusing to admit a jacket and keys seized from a defendant under inevitable discovery doctrine, reasoning that the defendant "was in complete possession of these items prior to the unlawful arrest, and guessing what might have happened if the officers had acted constitutionally solely involves conjecture").

It is also speculative to suggest that the small amount of marijuana on the bed would have been discovered during a search pursuant to the warrant. The State asks this Court to find that because a search warrant eventually was executed, the marijuana inevitably would have been found. Sgt. Vincent testified that the police "didn't search anything until the warrant came. All we did was wait until TFC Merritt called and said that the warrant was signed." As we have indicated *supra*, there is no evidence as to whether the warrant actually was executed and a search conducted, or if anything was seized. According to Tpr. Merritt's testimony, it appears that the warrant was executed on that same day, but the record is sparse on that point.

In *Nix* and *Oken*, where inevitable discovery was held to be applicable, the State offered evidence specifically addressing the inevitable discovery doctrine and the procedures that were used or would have been used to discover the evidence. *Nix*, 467 U.S. at 448–50, 104 S.Ct. at 2511–12, 81 L.Ed.2d 377; *Oken*, 327 Md. at 654–55, 612 A.2d at 271. In contrast, we refused to apply the inevitable discovery doctrine in *Stokes* because the prosecution offered inadequate evidence at the trial court level to carry its burden. 289 Md. at 164–66, 423 A.2d at 557–58. In that case we noted:

"Although the prosecution, seeking to invoke inevitable discovery, bears the burden of establishing the admissibility of otherwise tainted evidence, the state's attorney here made no effort in the trial court to demonstrate compliance with either prerequisite to admissibility under this exception to the exclusionary rule. . . . It is now on appeal too late to speculate about what procedures the police utilize when executing a search warrant for illegal narcotics, and, if they

exist, to further speculate whether following those pre-
scribed procedures would have revealed the location of the
drugs."

*Id.* at 165–66, 423 A.2d at 557–58 (citations omitted). The
record before this Court is insufficient to establish, by a
preponderance of evidence, that the marijuana would have
been discovered during a search pursuant to the warrant.

 As the United States Court of Appeals for the
Seventh Circuit noted, "[s]peculation and assumption do not
satisfy the dictates of *Nix* .... Inevitable discovery is not an
exception to be invoked casually, and if it is to be prevented
from swallowing the Fourth Amendment and the exclusionary
rule, courts must take care to hold the government to its
burden of proof." *United States v. Jones,* 72 F.3d 1324, 1334
(7th Cir.1995) (citations omitted). Accordingly, we hold that
the State has not met its burden under the inevitable discov-
ery doctrine.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED. CASE REMANDED TO THAT COURT
WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF
THE CIRCUIT COURT FOR ALLEGANY COUNTY.
COSTS IN THIS COURT AND THE COURT OF SPECIAL
APPEALS TO BE PAID BY ALLEGANY COUNTY.*

Chief Judge BELL concurs in the judgment only.