995 A.2d 783

Branden S. MURPHY a/k/a Jawaun Antonio Fussell

v.

STATE of Maryland.

No. 2905 Sept.Term, 2007.

Court of Special Appeals of Maryland.

May 27, 2010.

Nancy S. Forster and Martha Weisheit, Baltimore, MD, for Appellant.

Jeremy M. McCoy (Douglas F. Gansler, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, GRAEFF, and JAMES S. GETTY (Retired, Specially Assigned), JJ.

GRAEFF, Judge.

After a bench trial in the Circuit Court for Baltimore County, appellant, Jawaun Antonio Fussell, also known as Branden S. Murphy,[1] was convicted of robbery with a dangerous and deadly weapon, simple robbery, first degree assault, theft less than $100, two counts of use of a handgun in the commission of a crime of violence, false imprisonment, false imprisonment in a vehicle, kidnapping, and giving a false statement to a police officer. On appeal, appellant presents one question for our review, which we have rephrased: Did the circuit court err in denying his motion to suppress the gun found in his apartment?

For the reasons set forth below, we answer that question in the negative. Accordingly, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

In the spring of 2007, Sirronn Shell met appellant, and for a period of several months, he "hung out" with appellant and appellant's friends at appellant's apartment. In April 2007, Shell was at appellant's apartment with a couple of other people, and a handgun belonging to a man named Brandon "went missing."

Two weeks later, on May 6, 2007, Shell went to appellant's apartment to celebrate the birthday of a man named Petey. Shell, appellant, and several other men, including Brandon, Byrd, Mike, and Tayvon, left the apartment in two cars "to go get some girls." They stopped their cars behind a "Bill's Carpet" store because Byrd said that he had to urinate. Shell and Mike waited by one of the cars, and then several members of the group "ran up on" Shell and grabbed him. Shell struggled until he heard a "shotgun pop," and Byrd handcuffed him. Shell turned around and saw appellant holding a shotgun. A couple of the other members of the group passed

---

1. At the time of his arrest, appellant told police that his name was Branden Murphy, his brother's name.

around a nine millimeter handgun. Byrd removed Shell's wallet from his back pocket, passed it to Tayvon, and then returned it to Shell's pocket.[2]

Appellant put the shotgun to Shell's chest, twisted it into Shell's shirt, and accused Shell of stealing Brandon's gun two weeks earlier. Shell denied taking the gun, and someone in the group replied: "We'll kill you right here or whatever, just say you got it and it is over." Shell again denied taking the gun, and appellant struck Shell twice in his left jaw.

Shell then got back into the car, at gunpoint, and the group drove to Shell's residence to look for the missing gun. When they did not find the missing gun at Shell's residence, they removed Shell's handcuffs and told him that there were "no hard feelings, but it was like you are the new person around here, we have got to find out ... where this gun is at." The group departed, and Shell called the police.

At approximately 3:40 a.m., Baltimore County Police Officer Rodney Speights responded to Shell's residence. Shell told Officer Speights that he had been assaulted by five men, and he gave Officer Speights information about the men's names and physical descriptions. Officer Speights observed, consistent with Shell's statement, that Shell's cheeks and wrists were swollen and red. Shell told Officer Speights that he had been "hanging out from time to time at" appellant's apartment, that appellant had several friends that frequented the apartment with him, that appellant carried a shotgun when he answered the apartment door, and that Byrd sometimes would answer the door while carrying his nine millimeter handgun. Officer Speights, accompanied by Shell and Corporal Walter Clipper, went to the area where the assault took place and found Shell's earrings.

Officer Speights and Corporal Clipper, along with several patrol officers, then went to appellant's second floor apartment. They knocked on the door, and a person who identified

---

2. Appellant subsequently discovered that the forty dollars that previously had been in the wallet was missing.

himself as Brandon, and who "matched a description of one of the suspects involved in" the assault and robbery of Shell, opened the door. The police removed Brandon from the apartment, and they called into the apartment "announcing ourselves for everybody else to exit the apartment." At that point, a woman and two men, appellant and a man named Michael Dobbins, exited the apartment. They were detained "on the landing." The officers "verbally challenged the apartment again," and they then conducted a protective sweep of the apartment.

Officer Speights testified that they conducted a protective sweep "[b]ecause of the nature of the incident and because these subjects are known to have weapons in the apartment." He further explained that they had been told that five male subjects were involved in the incident, but they had only three males in custody.

Corporal Clipper similarly explained why they conducted a protective sweep of appellant's apartment:

We were looking for weapons, people that are armed. We have two more suspects still out. I was told there were four suspects. At this point we basically have three suspects. I still have another suspect out there.

And it very well—the other three are there, they could have come back and partied. That person could have been in there, even though the apartment seemed empty.

Corporal Clipper further explained:

We don't know who is going to pop out of a closet, basement, or anywhere else, or in this case a bedroom. The protective sweep was done for my protection. If you went and—say while I got a search warrant, while I have an officer sitting in the living room and securing the building, somebody could have come out if we don't do a protective sweep. Also, as I said, I'm still looking for a suspect and other weapons.

During the protective sweep, Corporal Clipper found a shotgun leaning against a dresser in the rear bedroom of the apartment.

Appellant moved to suppress the shotgun on the ground that there was no emergency requiring a protective sweep of his apartment, arguing that police had time to obtain a warrant for a search of the apartment.[3] The State, relying upon *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), countered that, because the police "had every reason to believe the other two [suspects] could have been inside" appellant's apartment, and because they "had concern about the existence of weapons," the police were permitted to make a protective sweep.

The circuit court denied the motion to suppress, stating:

I am not only familiar with ... *Buie,* the evidence I've heard in this case thus far is that the point in time when the officers arrived at the subject property, it was within the ambit of their knowledge that there were five, total of five suspects, all five being males. Three suspects had been identified as alighting from the apartment, along with one female. And so it seems reasonable—and there would have been a reasonable suspicion and a reasonable premise upon which to act with these officers. There were still two males who needed to be apprehended. Under those circumstances, I think it fits squarely within the rationale of the *Buie* decision, that those officers are permitted under an exigency principle to enter the confines of the apartment and perform a so-called protective sweep. First of all, to look for the other two people for whom they were looking, and secondly, it was still again within the universe or ambit of their knowledge, there was information that they had that there were weapons. I believe that the officers were justi-

---

3. Because appellant waived his right to trial by jury and elected a bench trial, the parties agreed to have the court rule on the suppression motion "in the course of" the officers' trial testimony. We have summarized, and will consider, only that testimony taken prior to the denial of the motion. *See Rush v. State,* 403 Md. 68, 82–83, 939 A.2d 689 (2008) ("In reviewing a circuit court's grant or denial of a motion to suppress evidence, we ordinarily consider only the evidence contained in the record of the suppression hearing." (Citations omitted)).

fied under Fourth Amendment principles in crossing the threshold of the apartment to perform this sweep.

The plain view doctrine comes [into] play from the standpoint of the evidence that I have heard that the shotgun was sitting in the open within the confines of the back bedroom of the apartment, and I don't have any reason to think that the officers' search, once they got into the apartment, exceeded the reasonableness scope.

So under the circumstances. . . . I shall respectfully deny the motion to suppress evidence.

This timely appeal followed.

## STANDARD OF REVIEW

In reviewing a circuit court's denial of a motion to suppress evidence, "we view the evidence adduced at the suppression hearing, and the inferences fairly deducible therefrom, in the light most favorable to the party that prevailed on the motion." *Williamson v. State*, 413 Md. 521, 531–32, 993 A.2d 626 (2010). We accept "[t]he factual findings of the suppression court and its conclusions regarding the credibility of testimony . . . unless clearly erroneous." *Rush v. State*, 403 Md. 68, 83, 939 A.2d 689 (2008) (citations omitted). With respect to the ultimate issue of constitutionality, however, we "make our own independent constitutional appraisal 'by reviewing the law and applying it to the facts of the case.'" *Williamson*, 413 Md. at 532, 993 A.2d 626 (quoting *Bailey v. State*, 412 Md. 349, 362, 987 A.2d 72 (2010)).

## DISCUSSION

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. A search of a person's home without a warrant is "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *Accord Williams v. State*, 372 Md. 386, 402, 813 A.2d 231 (2002). There are exceptions, however, to this general rule. One of these exceptions was set forth by the United States

Supreme Court in *Buie,* authorizing a protective sweep of a residence, in certain circumstances, when the police conduct an arrest inside the residence. 494 U.S. at 334, 110 S.Ct. 1093.

■ In *Buie,* the Court defined a "protective sweep" as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327, 110 S.Ct. 1093. A protective sweep is permissible incident to arrest if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334, 110 S.Ct. 1093. This exception to the warrant requirement is justified by the "interest of officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Id.* at 333, 110 S.Ct. 1093.

Appellant argues that the circuit court erred in relying on *Buie* in denying his motion to suppress the gun found in the apartment. He contends that the protective sweep conducted by the police was not justified by *Buie* for two reasons. First, he contends that a protective sweep is justified only when the police make an arrest inside the house, and here, the occupants of the residence "were ordered outside and arrested there." Second, he contends that "a protective sweep is valid only to the extent that the arrest which prompts it is valid," and he asserts that his arrest was unconstitutional.

The State counters that the circuit court properly denied appellant's motion to suppress. With respect to the claim that the arrest was invalid, the State argues that appellant's claim is waived because appellant failed to raise it in the circuit court. With respect to the claim that a protective sweep was not authorized because the occupants were arrested outside, the State argues that an arrest just outside the house can pose

a threat to the police that is equally as serious as one that occurs in the house. The State argues that, because the police "articulated a reasonable belief that the at-large suspects might still be [in appellant's] apartment, along with the firearms that were alleged to have been used in the armed robbery and assault" of Shell, the officers "acted reasonably and lawfully in conducting a protective sweep of the apartment for their own safety."

■ We begin with the argument that the protective sweep was invalid because the arrest that prompted it was unconstitutional. Appellant contends that, pursuant to *Payton*, 445 U.S. at 602, 100 S.Ct. 1371, the police may not enter a home without a warrant "to effect a routine felony arrest," and "the police performed an 'end run' around the *Payton* holding by ordering appellant outside of his apartment before they arrested him."

As the State notes, for this issue to be preserved for appellate review, appellant was required to challenge the constitutionality of his arrest in the circuit court. *See Russell v. State*, 138 Md.App. 638, 646, 773 A.2d 564 (2001) (argument not presented in suppression court not preserved for appellate review). *Accord McKoy v. State*, 127 Md.App. 89, 99, 732 A.2d 312 (1999); *Brashear v. State*, 90 Md.App. 709, 720, 603 A.2d 901, *cert. denied*, 327 Md. 523, 610 A.2d 796 (1992). Here, appellant did not challenge the legality of his arrest in the circuit court. Because this issue was not raised in or decided by the circuit court, we will not address it. *See* Rule 8–131(a) ("Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"). Accordingly, for purposes of this opinion, we will proceed on the premise that the arrest was legal.

We turn now to the legality of the protective sweep of appellant's apartment. Appellant attempts to distinguish this case from *Buie* based on the location of the arrest. In *Buie*, the police entered the residence to execute an arrest warrant. 494 U.S. at 328, 110 S.Ct. 1093. Here, by contrast, appellant

and the other occupants were arrested outside the apartment. Appellant argues that, because the arrest here occurred outside the residence, "the officers were not placed at risk of being 'ambushed' by another suspect on the premises, and there was no rationale for performing a 'protective sweep [of the apartment].' "

To be sure, the Supreme Court in *Buie* did not specifically address an arrest outside a suspect's home.[4] And neither party cites any Maryland case addressing whether the rationale of *Buie* applies to an arrest outside the residence when a protective sweep is reasonably necessary for the protection of the officers.[5]

A number of other courts, however, have addressed the issue. In *United States v. Lawlor*, 406 F.3d 37, 42 (1st Cir.2005), the United States Court of Appeals for the First Circuit addressed whether a police officer's action in entering a residence and conducting a protective sweep, incident to an arrest outside the residence, was reasonable. *Id.* at 42. Acknowledging that "*Buie* did not address whether a protective sweep can follow an arrest made just outside the home," the court stated:

> We think that an arrest that occurs just outside the home can pose an equally serious threat to arresting officers as one that occurs in the home. Therefore, we accept the position that a protective sweep may be conducted following an arrest that takes place just outside the home if sufficient facts exist that would warrant a reasonably prudent officer

---

4. The dissent did note, however, that although Buie was arrested inside the residence, the protective sweep occurred after Buie had been taken outside. *Maryland v. Buie*, 494 U.S. 325, 342, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (Brennan, J. dissenting).

5. In *Baith v. State*, 89 Md.App. 385, 392, 598 A.2d 762 (1991), this Court posed the question whether a protective sweep could be predicated "upon an arrest just outside the building as opposed to *Maryland v. Buie's* arrest inside a building." The Court did not address the issue, however, because the answer to that question was not necessary to resolve the appeal. *Id.* at 390–93, 598 A.2d 762.

to fear that the area in question could harbor an individual posing a threat to those at the scene. *Id.* The court noted that the officer and Lawlor were "just outside the house on its driveway—an area vulnerable to attack from someone inside the house." *Id.*

The United States Court of Appeals for the Fifth Circuit reached a similar conclusion in *United States v. Wilson,* 306 F.3d 231 (5th Cir.2002), *cert. denied,* 537 U.S. 1240, 123 S.Ct. 1371, 155 L.Ed.2d 211 (2003). In that case, as the officers approached a residence, the person under investigation came outside and met the police "about five to six feet outside the apartment." *Id.* at 234. After the suspect stated that some-one else was inside, the officers entered the apartment and found Wilson in possession of a firearm. *Id.* The court upheld the search of the apartment, stating that the authority to conduct a protective sweep pursuant to *Buie* applied " 'even if the arrest is made near the door but outside the lodging' if the arresting officers 'have reasonable grounds to believe that there are other persons present inside who might present a security risk.' " *Id.* at 238 (quoting *United States v. Watson,* 273 F.3d 599, 603 (5th Cir.2001)). The court noted that "nothing but an open door stood between the officers . . . and harm's way." *Id.* at 239. Given circumstances permitting an inference that there was a likelihood of firearms inside the apartment, the court concluded that "exigent circumstances existed to justify the officers' warrantless entry into [the] apartment for the purpose of conducting a protective sweep." *Id.*

The United States Court of Appeals for the Ninth Circuit similarly has rejected a per se rule that a protective sweep is not authorized if the arrest occurs outside the residence. In *United States v. Paopao,* 469 F.3d 760, 766 (9th Cir.2006), *cert. denied,* 550 U.S. 938, 127 S.Ct. 2249, 167 L.Ed.2d 1097 (2007), the court stated that "the location of the arrest, inside or outside the premises, should only bear on the question of whether the officers had a justifiable concern for their safety." The court noted that " '[a] bullet fired at an arresting officer standing outside a window is as deadly as one that is projected

from one room to another.'" *Id.* (quoting *United States v. Hoyos,* 892 F.2d 1387, 1397 (9th Cir.1989)).

Other federal courts also have concluded that the mere fact that the arrest occurs outside the residence does not, by itself, preclude a protective search for officer safety. *See United States v. Cavely,* 318 F.3d 987, 995 (10th Cir.) ("Although it is true that *Buie* involved an in-home arrest, courts have recognized that the same exigent circumstances present in *Buie* can sometimes accompany an arrest just outside of a residence or other structure."), *cert. denied,* 539 U.S. 960, 123 S.Ct. 2653, 156 L.Ed.2d 659 (2003); *United States v. Colbert,* 76 F.3d 773, 776–77 (6th Cir.1996) ("that the arrest takes place outside rather than inside the home affects only the inquiry into whether the officers had a reasonable articulable suspicion that a protective sweep is necessary by reason of a safety threat"); *United States v. Henry,* 48 F.3d 1282, 1284 (D.C.Cir. 1995) ("Although *Buie* concerned an arrest made in the home, the principles enunciated by the Supreme Court are fully applicable where ... the arrest takes place just outside the residence."); *United States v. Oguns,* 921 F.2d 442, 446 (2nd Cir.1990) (protective sweep incident to arrest "just outside" house satisfied reasonableness standard set forth in *Buie*).

State courts agree that a protective sweep may be justified based on an arrest made outside a residence. *See People v. Maier,* 226 Cal.App.3d 1670, 1675, 277 Cal.Rptr. 667 (Cal.Ct. App.) (issue in case of protective search is whether there is a reasonable belief of danger, not "on which side of a door an arrest is effected"), *cert. denied,* 199 Cal. Lexis 1450 (Cal.), *cert. denied,* 502 U.S. 848, 112 S.Ct. 149, 116 L.Ed.2d 115 (1991); *State v. Spencer,* 268 Conn. 575, 848 A.2d 1183, 1192–93 (rejecting per se rule that otherwise reasonable protective search of home is unreasonable simply because arrest occurred outside the home), *cert. denied,* 543 U.S. 957, 125 S.Ct. 409, 160 L.Ed.2d 320 (2004); *State v. Revenaugh,* 133 Idaho 774, 992 P.2d 769, 773 (1999) (protective sweep exception to warrant requirement applies when arrest occurs outside residence if officers have the requisite reasonable suspicion); *State v. Grossi,* 72 P.3d 686, 689 n. 2 (Utah Ct.App.) (exigent

circumstances exception set forth in *Buie* can be present for arrest "just outside of a residence"), *cert. denied,* 78 P.3d 987 (Utah 2003).

▮ We agree with the consensus of other courts that the reasonableness of a protective sweep of a residence incident to arrest does not turn on whether the arrest occurred inside or outside the residence. An arrest that occurs outside a residence can pose a threat to arresting officers that is equally as serious as when the arrest occurs inside the residence. The test of reasonableness pursuant to *Buie* is not determined solely by the location of the arrest. Rather, the test is whether the record shows "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie,* 494 U.S. at 334, 110 S.Ct. 1093.

▮ Based on our review of the record, we conclude that this test was satisfied, and the protective sweep of appellant's apartment was justified. Although the arrest occurred outside the apartment, the police had reason to believe that an individual posing a danger to the officers was in the apartment. Shell told Officer Speights and Corporal Clipper that he had been assaulted and robbed by five men, but only three men emerged from the apartment following the officers' orders for all of the occupants to exit the apartment. The crimes that the officers were investigating occurred hours earlier and involved robbery and assault at gunpoint. Moreover, Shell told the officers that both appellant and Byrd carried a gun when they answered the front door of the apartment. Neither appellant nor Brandon had a gun when they exited the apartment, and Byrd did not emerge from appellant's apartment.

Under these circumstances, there were sufficient facts to warrant a reasonably prudent police officer to believe that the other two suspects were in the apartment, along with the guns used in the robbery and assault. With these potential co-defendants on the other side of the door from where appellant

was being arrested, the police acted reasonably and lawfully in conducting a protective sweep of appellant's apartment for their safety. The circuit court properly denied appellant's motion to suppress the shotgun discovered in plain view during the sweep.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**